**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CRYE PRECISION LLC,

              Plaintiff,

v.

A123ISKOMTN1AA, et al.,

              Defendants.

Case No. 24-cv-06806

**Judge Mary M. Rowland**

**Magistrate Judge Maria Valdez**

**PLAINTIFF'S REPLY TO DEFENDANT EHOPE'S OPPOSITION TO PLAINTIFF'S
PRELIMINARY INJUNCTION AND ASSET RESTRAINT**

Plaintiff Crye Precision LLC ("Crye Precision" or "Plaintiff") hereby files this reply to Defendant EHOPE's (Def. No. 31) ("Defendant") Opposition to Plaintiff's Preliminary Injunction and Asset Restraint. [37]. Entry of a Preliminary Injunction maintaining relief already granted in a TRO against Defendant EHOPE (Def. No. 31) remains necessary and appropriate.

**BACKGROUND**

**The Crye Precision Trademarks and Products**

Crye Precision was founded in 2000 by Caleb Crye and Gregg Thompson, who were inspired to create innovative gear solutions and designs for military and law enforcement personnel. Declaration of Jonathan E. Antone ("Antone Decl.") at ¶ 3. Crye Precision is the proud supplier of military equipment and uniforms to most of the United States Special Operations, to the Armed Forces of NATO Countries, and to the elite special units of many European and other countries around the globe. *Id.* The Crye Precision brand is also used by and protects the members of many federal agencies and police departments. *Id.* Plaintiff owns numerous federally registered trademarks, including the MULTICAM marks (Reg. No. 4,737,503 and 4,443,275) (the "MULTICAM Trademarks"). *Id.* at ¶ 4; [16-1] at pp. 13-16. The MULTICAM Trademarks are

1

incontestable pursuant to 15 U.S.C. § 1065. Antone Decl. at ¶ 4. Plaintiff uses the MULTICAM Trademarks in connection with both military goods and commercial, non-military goods such as branded apparel, outerwear, headwear, accessories, and other merchandise (the "Crye Precision Products"). Antone Decl. at ¶ 4.

The Crye Precision brand has long been among the most popular tactical gear brands in the world and has been extensively promoted and advertised at great expense. *Id.* at ¶ 5. In fact, Plaintiff has expended millions of dollars annually in advertising, promoting, and marketing featuring its trademarks, including the MULTICAM Trademarks. *Id.* Crye Precision Products have also been the subject of extensive unsolicited publicity resulting from their high quality and innovative designs. *Id.* Because of these and other factors, the Crye Precision name and the MULTICAM Trademarks have become famous throughout the United States and around the world. *Id.* The MULTICAM Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. *Id*. As such, the goodwill associated with the MULTICAM Trademarks is of incalculable and inestimable value to Plaintiff. *Id.*

**Defendant's Infringing Product**

Defendant advertised, offered for sale, and sold unauthorized patches using the MULTICAM Trademarks (the "Defendant's Infringing Product") on the Amazon.com ("Amazon") e-commerce platform. *See* Figure 1 (emphasis added with red square); Declaration of Andrew D. Burnham ("Burnham Decl.") at ¶ 2; [17-2] at pp. 90-92. Defendant's Amazon listing that used Plaintiff's MULTICAM trademarks is directly connected to multiple Amazon Standard Identification Numbers ("ASINs") (see Figure 1).



*Figure 1*

## Procedural History

On August 9, 2024, the Court entered a Temporary Restraining Order ("TRO") that, among other things, enjoined Defendants from infringing the MULTICAM Trademarks (and Plaintiff's other trademarks), ordered Amazon.com, Inc. ("Amazon") to provide expedited discovery regarding Defendants' contact information and sales, and authorized expedited discovery from Defendants. *See* [22]. Pursuant to the TRO, Amazon provided sales data for four ASINs linked to the listing for Defendant's Infringing Product showing that Defendant sold 4,083 units with $26,732 in revenue. Burnham Decl. at ¶ 3. Amazon indicated that there is currently $16,824.63 restrained in Defendant's Amazon account. *Id.*

On August 19, 2024, Plaintiff filed its Motion for Entry of a Preliminary Injunction [26] ("PI Motion") and provided notice of the PI Motion to Defendants, including Defendant and

Defendant's counsel, via e-mail on the same day. *See* [26]. On August 22, 2024, the Court set a briefing schedule on the PI Motion and extended Defendant's deadline to respond to expedited discovery. *See* [30] and [31]. On August 30, 2024, the Court granted Plaintiff's PI Motion. *See* [34] and [35]. On September 3, 2024, Defendant filed its Opposition to Plaintiff's Preliminary Injunction and Asset Restraint [37].

## ARGUMENT

### A. Entry of a Temporary Restraining Order and Preliminary Injunction Remains Necessary and Appropriate

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Here, the Court has already found that Plaintiff has satisfied these requirements. *See* [22] and [35]. The requirements remain satisfied, and entry of the Temporary Restraining Order and Preliminary Injunction remain appropriate.

### 1. Plaintiff Has and Continues to Show a High Likelihood of Success on the Merits.

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale,

distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)[1].

i.  Plaintiff's Incontestable Registrations for the MULTICAM Trademarks

The MULTICAM Trademarks are incontestable pursuant to 15 U.S.C. § 1065. *Id.* Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the MULTICAM Trademarks are conclusive evidence of the validity of the MULTICAM Trademarks and of the registrations of the MULTICAM Trademarks, of Plaintiff's ownership of the MULTICAM Trademarks, and of Plaintiff's exclusive right to use the MULTICAM Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. Incontestability also means that Defendant is *legally barred* from challenging the validity of the MULTICAM Trademarks as merely descriptive marks. 15 U.S.C. § 1065; *see generally Park 'N Fly, Inc v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985).

ii.  Plaintiff Has and Continues to Demonstrate a Likelihood of Confusion

Plaintiff submitted evidence that Defendant used an unauthorized mark which is identical with, or substantially indistinguishable from, the registered MULTICAM Trademarks, and is therefore counterfeit. 15 U.S.C. § 1127; [17-2] at p. 90-92; Burnham Decl. at ¶ 2; Antone Decl. at ¶ 4. Defendant used the MULTICAM Trademarks in connection with the advertising, offering for sale, and sale of unauthorized goods. 15 U.S.C. § 1114(1)(a).

---

[1] Counterfeiting is a subset of trademark infringement that provides for enhanced damages and penalties if Defendant's mark is "…substantially indistinguishable from" Plaintiff's registered mark. *See* 15 U.S.C. § 1116(d)(1)(B) and 15 U.S.C. § 1117(c). Since Plaintiff only needs to show a likelihood of success on one of its claims at this stage, Plaintiff's analysis focuses on the broader trademark infringement claim. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.,* 549 F.3d 1079, 1096 (7th Cir. 2008).

The Seventh Circuit has held that where, as here, "one produces counterfeit goods[2] in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik,* 249 F. App'x 476, 479 (7th Cir. 2007); *see also NBA Props., Inc., et al. v. Yan Zhou, et al.,* 2017 U.S. Dist. LEXIS 148971, at *5 (N.D. Ill. Sept. 14, 2017) (internal citation omitted); *see also, Chloe SAS v. Sawabeh Info. Servs. Co,* 2014 U.S. Dist. LEXIS 124433, at *18 (C.D. Cal. Sept. 5, 2014). Accordingly, the Court can presume likelihood of confusion from Defendant's use of the MULTICAM Trademarks.

The result is the same when considered in light of the Seventh Circuit's enumerated factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick,* 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.; see H-D, U.S.A, LLC v. P'ships et al,* No. 21 C 3581, 2021 U.S. Dist. LEXIS 187253, at *7 (N.D. Ill. Sep. 24, 2021) (denying motion to dissolve preliminary injunction and finding that "…the inclusion of Plaintiff's trademarked names in the product's title creates a confusion that this product originated from Harley-Davidson's Daymaker brand.").

Defendant's Infringing Product was advertised using a mark identical to the MULTICAM Trademarks. Burnham Decl. at ¶ 2. The MULTICAM Trademarks are strong and distinctive marks that became famous, as defined under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), well

---

[2] The Lanham Act provides that a "counterfeit mark" is one that is (1) identical with or substantially indistinguishable from a registered mark, and (2) used in connection with the same goods or services that are in the registration. 15 U.S.C. §§ 1127, 1116(b)(1).

before any first use alleged by Defendant. Plaintiff has engaged in nationwide advertising, promotion, and use of its distinctive MULTICAM Trademarks and has had extensive sales of fabrics, clothing, and accessories in connection with its MULTICAM Trademarks for two decades. *See* Antone Decl. at ¶ 5. As such, both Plaintiff and Defendants advertise products using the MULTICAM Trademarks to the same consumers, targeting those consumers searching for genuine Crye Precision Products. [12] at p. 7. Thus, consumers searching for genuine Crye Precision Products (who are diverse with varying degrees of sophistication) are likely to have difficulty distinguishing genuine Crye Precision products from Defendant's Infringing Product. This is particularly true since Defendant's Infringing Product was advertised and sold on the Internet, and consumers could not inspect the physical product. Burnham Decl. at ¶ 2.

Further, Defendant was selling its product for only $5.89. *Id.* Courts "assume that the more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases.*" Monster Energy Co. v. Meng Chun Jing,* No. 15 C 277, 2015 U.S. Dist. LEXIS 86956, at *7-8 (N.D. Ill. July 6, 2015). Plaintiff does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that Defendant is attempting to "palm off" their products as being endorsed or affiliated with Plaintiff by using the MULTICAM Trademarks. *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Plaintiff has a strong likelihood of success on the merits.

### iii.  Defendant's Use of the MULTICAM Trademarks Is Not Fair Use

Defendant argues that its use of the MULTICAM Trademarks is fair use because Defendant "…only uses the word 'Multicam' to identity the color pattern, as the color of the product is identified as 'Flag-Multicam.'" [37] at pp. 7-8.  As stated above, because the MULTICAM

Trademarks are incontestable, Defendant is *legally barred* from challenging the validity of the MULTICAM Trademarks as merely descriptive marks. 15 U.S.C. § 1065; *see generally Park 'N Fly, Inc v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985) ("We conclude that the holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the grounds that the mark is merely descriptive.").

In any event, to prevail on a fair use defense, Defendant must show that: (1) they did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) they used the mark fairly and in good faith. *Luxottica Grp. S.p.A. v. Li,* No. 16 CV 487, 2017 U.S. Dist. LEXIS 21818, at *9 (N.D. Ill. Feb. 15, 2017) (quoting *Sorensen v. WD-40 Co*., 792 F.3d 712, 726 (7th Cir. 2015), cert. denied, 136 S. Ct. 801 (2016)). Even if the MULTICAM Trademarks were not incontestable, Defendant would not be able to show these three elements, as detailed below.

   *a. Defendant Used the MULTICAM Trademarks as a Trademark*

Defendant used the MULTICAM Trademarks in the product title of item for sale where source identifiers are traditionally used. Burnham Decl. at ¶ 2. A word functions as a trademark when it is "used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the source and of its products." *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 953 (7th Cir. 1992) (internal quotations omitted). Defendant prominently used the MULTICAM Trademarks in the product title as an "attention-getting symbol" to drive Amazon traffic to its listings. *See id.* at 954; *see also, Luxottica Grp. S.p.A. v. Li,* No. 16 CV 487, 2017 U.S. Dist. LEXIS 21818, at *8 (N.D. Ill. Feb. 15, 2017) (finding that because "defendant placed the mark in the title of the product listing, where a consumer might expect to find a brand name, consumers would be likely to attribute both

defendant's products and genuine Luxottica products to the same source"); *see also H-D, U.S.A, LLC,* 2021 U.S. Dist. LEXIS 187253, at *7.

      b.  *Defendant's Use of the MULTICAM Trademarks Is Not Descriptive*

Defendant asserts that it only uses the word 'Multicam' descriptively to "identify the color pattern." [37] at p. 7-8. Again, as incontestable marks, Defendant is legally barred from challenging their validity as merely descriptive marks. 15 U.S.C. §1065; *see generally Park 'N Fly, Inc v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985). Moreover, "MULTICAM" had no meaning in the industry before Plaintiff began using the MULTICAM Trademarks. Rather, it is a coined portmanteau and is not a word of description in ordinary English. *See Multicam*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/multicam (last visited Sept. 12, 2024) (showing "[t]he word you've entered isn't in the dictionary."); *See also* Burnham Decl, at ¶ 4. *See, e.g.*, *DJ Direct, Inc. v. Margaliot*, 512 F. Supp. 3d 396, 409-410 (E.D.N.Y. 2021) (holding that "KaraoKing," a portmanteau of 'Karaoke' and 'King,' was suggestive, inherently distinctive, and entitled to protection).

Defendant has not provided any evidence to support its claims, including evidence that the MULTICAM Trademarks are "synonymous" with "camouflage" as a "color descriptor." [37] at p. 7. Defendant's argument that "MULTICAM" is synonymous with this pattern also fails since the received product is not the product shown on the listing. Specifically, the color pattern of the product advertised, and the color pattern of the received product are different. *See* Figure 2; Burnham Decl, at ¶ 2.

| Defendant's Advertised Product | Defendant's Infringing Product |
|---|---|
|  | |

*Figure 2*

If Defendant was using "MULTICAM" as a "descriptor" for the pattern as it claims, Defendant would not produce and ship a product with a different pattern than what was advertised in the listing. Thus, Defendant's use of the MULTICAM Trademarks did not, nor could it, describe any actual "color pattern" or characteristic of Defendant's Infringing Product. Rather, Defendant used the MULTICAM Trademarks in the listing title to attract consumers and palm off Defendant's Infringing Product as a genuine Crye Precision Product. *Id.* at ¶ 2.

### c. *Defendant's Use of the MULTICAM Trademarks Was Not in Good Faith*

Defendant's use of the MULTICAM Trademarks in the product listing title for Defendant's Infringing Product was not in good faith. There was no reason for Defendant to include the MULTICAM Trademarks in its listing as it did not refer to any characteristic or aspect of the product. Defendant's Infringing Product listing already used terms associated with camouflage patterns such as "tactical" and "military." *See* [17-2] at p. 90-92. Defendant could have also simply used the term "camouflage" or "camo" to describe the product. *See Volkswagen AG, et al. v. Iman365-USA, et al.,* No. 18-cv-6611 (N.D. Ill. Feb. 28, 2020) (unpublished). Likewise, any

minimal due diligence would have revealed Plaintiff's registrations for the MULTICAM Trademark. As such, Defendant cannot show that it meets all three elements required for its fair use defense, and Plaintiff has shown a high likelihood of success on the merits.

### 2. Plaintiff Does Not Have an Adequate Remedy at Law and Will Suffer Irreparable Injury Without the Preliminary Injunction

Since Plaintiff has shown a likelihood of success of the merits, Plaintiff is entitled to the benefit of the rebuttable presumption of irreparable harm as provided in Section 1116(a) of the Lanham Act. Defendants have failed to provide any evidence to rebut that presumption. Additionally, the Seventh Circuit has also clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no legal remedy. *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013) ("irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion"); *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001).

Plaintiff has designed and produced products for military and law enforcement personnel as well as branded gear for the public for many years and has become famous around the world for high quality, innovative gear and products. [16] at ¶¶ 4-5. The goodwill associated with the MULTICAM Trademarks is of incalculable and inestimable value to Plaintiff. *Id.* at ¶ 11. Defendants' attempt to "piggyback" on Plaintiff's efforts through the unauthorized use of the MULTICAM Trademark has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. *Id.* at ¶¶ 26-31; *see also Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994).

Defendant also argues that "merely changing the listing title would adequately remedy any perceived harm" and that there is "no reason for the continued restriction of assets of Defendant." [37] at p. 9. However, a defendant "faces a heavy burden to establish mootness [of an injunction] in such cases because otherwise they would simply be free to return to their old ways after the threat of a lawsuit has passed." *Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd.*, 799 F. Supp. 2d 558, 567 (M.D. N. Cal. 2011) (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001)). Bald assertions by Defendant that it will stop using the MULTICAM Trademarks are not enough to carry this heavy burden and, in the context of an infringement action, such assertions standing alone cannot eliminate Plaintiff's reasonable expectation that the alleged violation will recur in the absence of a court order. *Id.* In addition, the asset restraint remains necessary to preserve Plaintiff's equitable remedy in an accounting of profits. *See* Complaint [1].

Finally, Defendant cites *Grupo Mexicano* to assert that the asset restraint is improper, which found that a court is not permitted to freeze a defendant's assets solely to preserve a plaintiff's right to recover damages. *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 333 (1999). However, the asset restraint remains appropriate since Plaintiff continues to seek both legal and equitable remedies, including an accounting of profits. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002).

**3. The Balance of Harms Remains in Plaintiff's Favor**

If the asset restraint is lifted, it is highly likely that Defendant will transfer the current balance of $16,825 out of its Amazon account and outside of the United States. *See* [15] at ¶¶ 5-11. Defendant has not disputed that the balance of harms weighs in Plaintiff's favor and, for the

reasons provided in Plaintiff's Memorandum in Support of its Motion for Entry of a Temporary Restraining Order, the balance of harms continues to favor Plaintiff. *See* [14] at 9-10.

### 4. Defendant's Assets are Appropriately Restrained

To exempt assets from an asset freeze, "[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *See e.g., Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015). Courts in this District and elsewhere regularly decline to modify or lift asset freeze orders in the face of ambiguous or unpersuasive evidence, let alone where a defendant fails to provide any documentary evidence. *See, e.g.*, *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Companies, et al.*, 2022 WL 17176498, at *2 (N.D. Ill. Nov. 23, 2022); *Johnson & Johnson*, 2020 U.S. Dist. LEXIS 248831 at *8; *Entertainment One UK Ltd. V. 2012Shiliang*, 384 F. Supp. 3d 941, 954 (N.D. Ill. 2019); *H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., Ltd.*, 2017 U.S. Dist. LEXIS 207613 at *6 (N.D. Ill. Dec. 18, 2017); *Monster Energy Co.*, 136 F. Supp. 3d at 910 (refusing to modify asset freeze where defendants did not submit "any evidence regarding their PayPal account transactions to show that these funds are not the proceeds of counterfeiting activities").

Defendant has not satisfied its burden to show that the $16,825 restrained in its Amazon account is not proceeds of counterfeiting activities. *See Delta Tech. Dev. LLC v. Bigjoys & Seasonblows.com*, 2024 U.S. Dist. LEXIS 142805 at * 16 (N.D. Ill. Aug. 12, 2024). Defendant also failed to perform a search for infringing product sales or provide any information as to how these records are created. *Id.* (screenshot evidence showing Defendant's sales data deemed unreliable because Defendant "should have obtained that evidence from a data request to Amazon itself.").

Conversely, Amazon data provided to Plaintiff shows that Defendant has made $26,732 in sales of the Infringing Product, which is well above the amount restrained. Burnham Decl. at ¶ 3.

13

Defendant argues that only about $4,500 in sales for the single ASIN using MULTICAM should be considered. See [37] at p. 10. However, the ASINs that Defendant's use of MULTICAM drives traffic to are relevant infringing sales. A Court in this District recently addressed and dispelled Defendant's argument, stating:

> "In other words, you look at some general [infringing product listing] that uses the accused mark or what's claimed to be the accused mark, and then [the infringing product listing] draws you in, so to speak. And then you can click on different [ASINs] underneath that, and perhaps one or more of those [ASINs] underneath that doesn't use those same words, but from a trademark perspective, that probably doesn't matter because the [the infringing product listing] that's been used to get you there has the trademark on it."

*Mattel Inc, v. The P'ships,* No. 24-cv-3647 (N.D. Ill. June 13, 2024), Dkt. 94 at 15:2-11; Burnham Decl. at ¶ 5. Like in *Mattel,* Defendant uses Plaintiff's MULTICAM Trademarks in the title of the infringing product listing to attract consumers to each of the ASIN purchasing options available on the same listing. As such, should the Court be inclined to reduce the asset restraint, it should not be less than the $26,732 (*i.e.*, the total sales for ASINs).

### 5. Defendant's Request for Reimbursement Based on an Improper Restraint Fails

Defendant claims that it is entitled to attorneys' fees because Amazon disabled all ASINs directly linked to Defendant's use of the MULTICAM Trademarks. [37] at pp. 10-13. Defendant's argument is meritless. The TRO enjoined Defendant from infringing the MULTICAM Trademarks, and instructed third-party providers (including Amazon) to disable and cease displaying advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the MULTICAM Trademarks. [22] at ¶¶ 1, 3. Plaintiff's email request to Amazon included a copy of the signed TRO and a request for specific information sought in connection with the expedited discovery provision of the TRO (paragraph 2). Burnham Decl. at ¶ 6. This included a request for sales information for the related ASINs. *Id.* Plaintiff did not instruct Amazon to disable any specific listings. *Id.* Regardless, Plaintiff does not have access

14

to the third-party Amazon platform to disable listings. Amazon determines what actions to take when it received the TRO and performs those actions, not Plaintiff. Amazon can also independently disable Defendant's listings based on provisions in its terms of use for sellers who use the Amazon platform.[3] Defendant also provides no authority supporting its argument that Plaintiff is liable for actions taken by a third party in connection with a properly entered TRO or pursuant to a third party's terms of use. As such, Defendant's request for fees is both factually and legally incorrect, and must be denied.[4]

## <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Entry of a Preliminary Injunction against Defendant without any limitation on the asset restraint. In the alternative, the Court should reduce the asset restraint to no less than the $26,732 Defendant generated in sales for the Infringing Product.

---

[3] *See* Amazon Anti-Counterfeiting Policy, sellercentral.amazon.com, https://sellercentral.amazon.com/help/hub/reference/external/201165970?initialSessionID=apay%3D141-0199604-6405646&ld=ELXXABR-trustworthyshopping.aboutamazon.com_googhydr-20 (last visited Sept. 17, 2024) ("If you sell or supply inauthentic products, we may immediately suspend or terminate your Amazon selling account"… "We remove suspect listings based on our own review of products.").

[4] Reg. Nos. 4,757,749 and 4,329,717 were included in the TRO. These registrations are owned by Plaintiff but not used as the basis of an infringement claim against Defendant, so these registrations are irrelevant.

Dated this 17th day of September 2024.    Respectfully submitted,

/s/ Andrew D. Burnham
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Andrew D. Burnham
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
aburnham@gbc.law

*Counsel for Plaintiff Crye Precision LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of September 2024, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of Electronic Filing" to the parties of record in this case.

/s/ Andrew D. Burnham
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Andrew D. Burnham
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
aburnham@gbc.law

*Counsel for Plaintiff Crye Precision LLC*