**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CRYE PRECISION LLC, | |
| Plaintiff, | Case No. 24-cv-06806 |
| v. | **Judge April M. Perry** |
| A123ISKOMTN1AA, et al., | **Magistrate Judge Maria Valdez** |
| Defendants. | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

Pursuant to this Court's Order [82], Plaintiff Crye Precision LLC ("Plaintiff" or "Crye Precision") submits the following supplemental memorandum in support of Plaintiff's previously filed Motion for Entry of Default and Default Judgment [62] against the Defendants remaining in this case (the "Defaulting Defendants") and corresponding Memorandum [63].

I.  **INTRODUCTION**

On December 23, 2024, the Court entered a Minute Entry directing Plaintiff to provide a supplemental brief in support of its Motion for Entry of Default and Default Judgement [62]. *See* [82]. Specifically, Plaintiff was instructed to provide information "including the size and scope of the defendant's operations, the price range of the counterfeited products sold, and any other information that supports the sought statutory damages award." *Id*. As detailed in Plaintiff's Motion to Stay and Compel [84], Defendants failed to provide responses to Plaintiff's First Set of Interrogatories, First Set of Requests for Admissions, and First Set of Requests for Production ("Plaintiff's Discovery Requests").[1] The Court entered an order compelling Defendants to do so

---

[1] Plaintiff's Discovery Requests were served on Defendants on August 19, 2024.

by January 24, 2025. *See* [88]. Plaintiff's Discovery Requests include numerous requests for information and documentation necessary for Plaintiff to ascertain the size and scope of Defendants' sales of infringing products, as well as other information requested by the Court. *See* [82]. Defendants were served with the Order [88] compelling responses to Plaintiff's Discovery Requests, but have failed to timely respond or produce any responsive documents. *See* Declaration of Justin R. Gaudio ("Gaudio Dec.") at ¶ 2.

With limited information available, Plaintiff has created a table compiling information available to Plaintiff, available in the record, and previously filed as Exhibit 2 [17] to the Declaration of Jonathan E. Antone regarding Defaulting Defendants. *See* Exhibit 1 of the Gaudio Dec. at ¶ 3. Additionally, Plaintiff has compiled and included comprehensive screenshot evidence regarding each of Defaulting Defendants. Exhibit 2 of Gaudio Dec. at ¶ 4.

Because Defaulting Defendants have failed to participate in this case, respond to Plaintiff's Discovery Requests, and comply with this Court's Order [88], the full extent of Defaulting Defendants' sales remains unknown. In trademark counterfeiting cases, Congress has provided the remedy of statutory damages for brand owners, explicitly recognizing the difficulty of proving actual damages in cases against counterfeiters. Plaintiff's requested statutory damages awards are appropriate in this case given Defaulting Defendants' egregious counterfeiting and limited information available regarding sales. Plaintiff has grouped Defaulting Defendants into two groups for the amount of statutory damages sought under 15 U.S.C. § 1117(c): Group A ($35,000) and Group B ($25,000). These amounts of statutory damages sought per Defaulting Defendant are appropriate given the information on the record and factors that Courts have considered in these types of cases, including wide exposure over the Internet, deterrence of Defaulting

Defendants, and deterrence of similarly situated online sellers.  For certain Defaulting Defendants in Group A, Plaintiff alternatively requests an award of profits under 15 U.S.C. § 1117(a).

## II.    SUPPLEMENTAL FACTUAL BACKGROUND

As noted above, Plaintiff has grouped Defaulting Defendants into two groups based on available information regarding the evidence available to Plaintiff, including the exposure of Defaulting Defendants' online marketplaces.  Defaulting Defendants in this case are selling counterfeit Crye Precision products through online marketplace accounts, which affects the type and amount of information available regarding revenue.

Defaulting Defendants in this case are selling counterfeit Crye Precision products on the online marketplace platforms hosted by eBay Inc. ("eBay"), Amazon.com, Inc. ("Amazon"), Wish US Holdings LLC ("Wish.com"), Walmart Inc. ("Walmart"), and DHgate.com ("DHgate") (collectively, the "Online Marketplace Platforms").  In this arrangement, e-commerce store hosting and payment systems are provided by the marketplace platform. Sellers on these online marketplace platforms have the potential to earn a significant amount of money from selling products.  Amazon, for example, is the largest e-commerce platform in the United States, and had 2.3 billion visits in May 2024.[2]  Similarly, eBay and Walmart are the second and fourth largest e-commerce platforms in the United States, and had, respectively, 708 million and 394 million visits in May 2024.[3]

Counterfeiters such as Defaulting Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement.  E-commerce store operators like Defaulting Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction

---

[2] https://www.practicalecommerce.com/charts-top-ecommerce-sites-by-traffic-q2-2024.
[3] *Id.*

of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Gaudio Dec. at ¶ 5.

When restraining accounts, Plaintiff requests the Online Marketplace Platforms to provide the third-party discovery authorized by the Temporary Restraining Order, including the names and email addresses for Defaulting Defendants. In this case, DHgate did not provide Plaintiff with any information about infringing product revenue. Gaudio Dec. at ¶ 6. Amazon, eBay, Walmart, and Wish only provided limited revenue figures for a single product having a unique product identification number. *Id.* The Online Marketplace Platforms do not provide comprehensive sales information because it would be unduly burdensome on them to search all of defendants' listings for potential infringing sales. Gaudio Dec. at ¶ 7. Defaulting Defendants are all willful infringers and unwilling to provide more information regarding their counterfeiting operations.

## III.    SUPPLEMENTAL ARGUMENT

"The trial court's primary function is to make violations of the Lanham Act unprofitable to the infringing party." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985). Plaintiff has requested an award of statutory damages pursuant to 15 U.S.C. § 1117(c). The Lanham Act allows a plaintiff to elect, at any time prior to final judgment being rendered, one of two alternative recovery options: (1) actual damages caused by the infringement, or (2) statutory damages. *See* 15 U.S.C. § 1117. Section 1117(c) provides that a plaintiff may elect to receive between $1,000 and $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, and up to $2 million if the violation is willful. 15 U.S.C. § 1117(c)(1)-(2). Congress specifically provided the option of statutory damages because:

> The committee recognizes that under current law, a civil litigant may not be able to prove actual damages if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting. Moreover, counterfeiters' records are frequently

> nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible. Enabling trademark owners to elect statutory damages is both necessary and appropriate in light of the deception routinely practiced by counterfeiters.

Senate Report No. 104-177, S. Rep. 104-177, at *10 (1995). Courts have found that an award of statutory damages are particularly appropriate in default judgment cases because "the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007) (citing *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004); *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 123 (S.D.N.Y. 2003); *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003)). The *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.* Court held that "requiring an evidentiary hearing for statutory damages here would defeat the purpose of 15 U.S.C. § 1117(c)(2)." *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, at *11 (N.D. Ill. 2008); see also, *Chanel, Inc. v. Wrice*, 2015 U.S. Dist. LEXIS 15337, at *16 (N.D. Ohio 2015) (determining statutory damages without evidentiary hearing, noting that defendants who had defaulted would likely not participate in an evidentiary hearing if it occurred).

As shown in Exhibit 1 to the Gaudio Declaration, Plaintiff has grouped the Defaulting Defendants based on the requested statutory damages award: "Group A" and "Group B." For the reasons provided above, and the reasons in Plaintiff's Memorandum in Support of its Motion for Entry of Default and Default Judgment ([63] at pp. 6-10), Plaintiff respectfully requests that this Court enter an award of thirty-five thousand dollars ($35,000) per Defaulting Defendant in Group A and twenty-five thousand dollars ($25,000) per Defaulting Defendant in Group B. These amounts are appropriate given the information this Court does have and factors that courts have

considered in these types of cases: (1) Defaulting Defendants' willful infringement; (2) efforts taken by Plaintiff to promote, protect, and enhance its trademarks; (3) wide exposure over the Internet; (4) deterrence of Defaulting Defendants; and (5) deterrence of similarly situated online sellers.  In addition to these reasons, the requested award is appropriate for the reasons below:

  I.  <u>Group A's Requested Statutory Damages Award Is Appropriate</u>

  Group A consists of Defaulting Defendants which sell products on at least the marketplace platforms hosted by Amazon, eBay and Walmart.  Plaintiff requests a statutory damages award of thirty-five thousand dollars ($35,000) for these Defaulting Defendants in Group A.  The online marketplace platforms Amazon, eBay and Walmart are three of the largest four e-commerce platforms in the United States.  *See supra* n.2.  These platforms experience traffic from hundreds of millions of consumers on a monthly basis.  In the case of Amazon, billions of consumers visit the platform each month.  *Id.*  The Defaulting Defendants in Group A have immensely wide exposure to consumers throughout the United States.

  The limited information provided by Amazon, eBay, and Walmart for Defaulting Defendants in Group A indicates that the amount currently restrained in Defaulting Defendants' known financial accounts ranges from $0 to $5,263.  Exhibit 1 to Gaudio Dec. at ¶ 3.  The amount frozen in Defaulting Defendants' accounts only includes funds generated over a short period of time and there is likely significant money generated by the Defendants that has been transferred to bank accounts outside the jurisdiction of this Court.  Additionally, limited information provided by Amazon, eBay, and Walmart for Defaulting Defendants in Group A indicates that the known revenue generated by Defaulting Defendants in Group A from the sale of infringing products is up to at least $13,544. *Id.*  However, the limited infringing product revenue information available to

Plaintiff only includes revenue figures for a single product having a unique product identification number.

Plaintiff is not able to determine the total revenue for Defendants' online marketplace accounts because Defendants failed to comply with this Court's Order [88]. Although complete financial documentation is not available, the requested $35,000 statutory damages award is warranted based on several factors, including Defaulting Defendants' wide exposure over the Internet on the most frequently viewed online marketplace platforms, Defaulting Defendants' willful infringement, efforts taken by Plaintiff to promote, protect, and enhance its trademarks, and deterrence of Defaulting Defendants and similarly situated online sellers.

II.   Plaintiff's Alternatively Request for an Award of Certain Defaulting Defendants' Profits for Group A Defendants is Appropriate

If the Court finds that a statutory damages award of under $5,000 is appropriate for certain Defaulting Defendants in Group A, Plaintiff alternatively requests an award of profits under to 15 U.S.C. § 1117(a). *See* Exhibit 1 of Gaudio Dec. at ¶ 3. Pursuant to 15 U.S.C. § 1117(a), where a violation under section 1125(a) has been established, "the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity" to recover defendants' profits. 15 U.S.C. § 1117(a). Further, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* In other words, "it is the infringer's burden to prove any proportion of his total profits which may not have been due to use of the infringing mark." 5 McCarthy on Trademarks § 30:65. "There may be a windfall to the trademark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer." *WMS Gaming, Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008) (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942)).

In cases where defendants have failed to produce documents to characterize revenue, courts have entered a profits award for the entire revenue amount. *See WMS Gaming, Inc.* 542 F.3d at 608 (7th Cir. Ill. 2008) ("[t]he burden was therefore on [defendant] to show that certain portions of its revenues…were not obtained through its infringement of WMS's marks."); *Chloe v. Queen Bee of Beverly Hills*, 2009 U.S. Dist. LEXIS 84133, at *15-17 (S.D.N.Y. Jul. 16, 2009) (entering profits award for the entire revenue amount in trademark infringement case even though "records offer no guidance as to how much of this revenue stream related to [Plaintiff's] products [as opposed to other products not at issue in this case] or as to the costs incurred in acquiring and selling these products.").

Since Defaulting Defendants have chosen not to participate in these proceedings, respond to Plaintiff's Discovery Requests, or comply with this Court's Order [88], Plaintiff has limited available information regarding their profits from the sale of infringing products. The limited information provided by Amazon, eBay, and Walmart for Defaulting Defendants in Group A indicates that the amount currently restrained in Defaulting Defendants' known financial accounts ranges from $0 to $5,263. Exhibit 1 of Gaudio Dec. at ¶ 3. The amount frozen in Defaulting Defendants' accounts only includes funds generated over a short period of time and there is likely significant money generated by the Defendants that has been transferred to bank accounts outside the jurisdiction of this Court. Additionally, limited information provided by Amazon, eBay, and Walmart for Defaulting Defendants in Group A indicates that the known revenue generated by Defaulting Defendants in Group A from the sale of infringing products is up to at least $13,544. *Id.* Since Defendants have failed to participate in the proceedings and have not met their burden

of apportioning gross sales or showing any deductions, Plaintiff respectfully requests that the Court award the profits as detailed in Exhibit 1 of the Gaudio Dec.[4] *Id.*

    III.   <u>Group B's Requested Statutory Damages Award is Appropriate</u>

Group B consists of Defaulting Defendants which sell products on at least the marketplace platforms hosted by DHgate and Wish. Plaintiff requests a statutory damages award of twenty-five thousand dollars ($25,000) for these Defaulting Defendants in Group B. The online marketplace platforms DHgate and Wish are available throughout the United States. Although DHgate and Wish are not visited by consumers as often as the marketplace platforms in Group A, DHgate receives approximately 65 million visits in per month, and Wish receives approximately 31 million visits per month.[5] The Defaulting Defendants in Group B also have wide exposure to consumers in the United States.

The limited information provided by Wish and DHgate for Defaulting Defendants in Group B indicates that the amount currently restrained in Defaulting Defendants' known financial accounts ranges from $0 to $880. The amount frozen in Defaulting Defendants' accounts only includes funds generated over a short period of time and there is likely significant money generated by the Defendants that has been transferred to bank accounts outside the jurisdiction of this Court. Additionally, limited information[6] provided by Wish for Defaulting Defendants in Group B indicates that the known revenue generated by Defaulting Defendants in Group B from the sale of infringing products is up to at least $33,212. However, the limited infringing product revenue

---

[4] If the Court finds that a statutory damages award of under $5,000 is appropriate, Plaintiff will provide the Court with a revised proposed Default Judgment Order.

[5] *See* https://www.worthofweb.com/website-value/dhgate.com/; https://www.worthofweb.com/website-value/wish.com/.

[6] DHgate did not provide Plaintiff with any revenue information.

information available to Plaintiff only includes revenue figures for a single product having a unique product identification number.

Plaintiff is not able to determine the total revenue for Defendants' online marketplace accounts because Defendants failed to comply with the Court's Order [88]. Although complete financial documentation is not available, the requested $25,000 statutory damages award is warranted based on several factors, including Defaulting Defendants' wide exposure over the Internet, Defaulting Defendants' willful infringement, efforts taken by Plaintiff to promote, protect, and enhance its trademarks, and deterrence of Defaulting Defendants and similarly situated online sellers.

## **CONCLUSION**

Accordingly, Plaintiff respectfully requests that this Court enter an award of thirty-five thousand dollars ($35,000) per Defaulting Defendant in Group A and twenty-five thousand dollars ($25,000) per Defaulting Defendant in Group B pursuant to 15 U.S.C. § 1117(c). If the Court finds that a statutory damages award of under $5,000 is appropriate for certain Defaulting Defendants in Group A, Plaintiff alternatively requests an award of profits under to 15 U.S.C. § 1117(a).

Dated this 13th day of February 2025.       Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Andrew D. Burnham
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
aburnham@gbc.law

*Counsel for Plaintiff Crye Precision LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of February 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, I will electronically publish the documents on a website, and I will send an e-mail to the e-mail addresses identified in Exhibit A hereto that includes a link to said website.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Andrew D. Burnham
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
aburnham@gbc.law

*Counsel for Plaintiff Crye Precision LLC*